# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Debbie L. D., | No. 23-cv-649 (DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley, Commissioner of Social Security Administration, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Debbie D. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on Plaintiff's Motion seeking judgment on the administrative record. (Docs. 22 ("motion"), 23 ("memorandum").) The Commissioner filed his response brief in opposition to Plaintiff's motion on September 18, 2023. (Doc. 25.) Plaintiff filed her reply brief on September 29, 2023. (Doc. 26.) This matter is now ripe for the Court's decision. For the reasons stated below, the Court grants in part and denies in part Plaintiff's motion, grants in part and denies in part Defendant's motion, and remands this matter to the Commissioner for further proceedings consistent with this Order.

## BACKGROUND

On February 1, 2021, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning on May 2, 2019. (Tr.[1] at 21, 94, 95.) The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon Plaintiff's request for reconsideration. (Tr. at 128, 143 (initial denial), 150, 160 (reconsideration).) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on May 10, 2022. (Tr. at 21, 52-85.) Plaintiff was represented by counsel, appeared at the hearing, and testified on her own behalf. (Tr. at 21, 52-77.) A vocational expert also testified, opining that Plaintiff could perform her past relevant work as a home health aide. (Tr. at 34, 81.) The vocational expert testified that alternatively, there were a significant number of jobs in the national economy across three representative occupations listed in the Dictionary of Occupational Titles ("DOT"), each of which a person with similar limitations to Plaintiff could perform: sealing machine operator, (DOT No. 920.685-074); laundry worker (DOT No. 361.684-014); and labeler (DOT No. 920.587-014). (Tr. at 35, 81.)

On May 20, 2022, the Commissioner sent a notice of unfavorable decision to Plaintiff. (Tr. at 21-36.) The ALJ recognized that Plaintiff suffered from several severe impairments, including lumbar degenerative disc disease, chronic pain syndrome, orthostatic hypotension, and chronic obstructive pulmonary disease ("COPD"). (Tr. at 24.)

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on May 15, 2023. (Doc. 9.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

The ALJ also acknowledged that Plaintiff suffered from several non-severe, medically determinable impairments: migraine headaches, gastroesophageal reflux disease, vertigo, major depressive disorder, and anxiety. (*Id.*) The ALJ noted that Plaintiff's migraine headaches and gastroesophageal reflux disease were resolved with medication, and her vertigo, major depressive disorder, and anxiety have resulted in no more than minimal work-related restrictions. (*Id.*) As it relates to Plaintiff's mental limitations,[2] the ALJ found that Plaintiff's medically determinable mental impairments of major depressive disorder and anxiety "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere." (*Id.*) But the ALJ found that Plaintiff was mildly impaired in her ability to understand, remember, and apply information; mildly impaired in her ability to interact with others; mildly impaired in her ability to concentrate, persist or maintain pace; and mildly impaired in her ability to adapt or manage herself. (Tr. at 25.)

---

[2] In evaluating the limitations a claimant's mental impairments impose, an ALJ is directed to consider four broad functional areas: (1) the claimant's ability to understand, remember, or apply information; (2) the claimant's ability to interact with others; (3) the claimant's ability to concentrate, persist, or maintain pace; and (4) the claimant's ability to adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ must rate the degree of a claimant's impairment in each functional area based on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(4); *see also* SSA POMS DI 34001.032(F)(2), https://perma.cc/RDE6-HZDV (last visited March 27, 2024) (describing the distinctions between each point on the severity scale in the Social Security Administration Program Operations Manual System ("POMS")).

Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform medium work[4] with the following additional limitations: frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; occasional balancing; frequent stooping; no exposure to unprotected heights or moving mechanical parts; and no concentrated exposure to dust, odors, fumes, and pulmonary irritants**.** (Tr. at 28.)

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4)[5] for evaluating SSI and DIB claims. Rather, she focuses her challenge on two aspects of the ALJ's decision. First, Plaintiff maintains that the ALJ's RFC finding is not based on substantial evidence because the ALJ failed to incorporate the mild mental limitations he found at step two into Plaintiff's RFC and did not explain this omission. Next, Plaintiff asserts that the ALJ's RFC determination

---

[3] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[4] By regulation, medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c); *see also* 20 C.F.R. § 416.967(c).

[5] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(i-v), (d-e); 416.920(a)(4)(i-v), (d-e).

is unsupported by substantial evidence because the ALJ improperly rejected the medical opinion of Certified Nurse Practitioner Katie Swanson regarding Plaintiff's need for a walker. The Court addresses each issue in turn.

## ANALYSIS

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019) (cleaned up) (further citation omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

I.   **THE ALJ'S FAILURE TO ADDRESS PLAINTIFF'S MILD MENTAL LIMITATIONS IN THE RFC DETERMINATION NECESSITATES REMAND.**

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because although the ALJ found at step two that Plaintiff had mild mental limitations in all four of the broad areas of mental functioning, known as the "paragraph B" criteria, the ALJ neither incorporated those limitations into Plaintiff's RFC nor provided a reason for their omission. In Plaintiff's estimation, the ALJ's omission of her mild mental limitations from the RFC determination and lack of explanation for such an omission amount to reversible error because the omission bears on the hypothetical questions provided to the vocational expert. Plaintiff does not challenge the ALJ's findings at step two but argues that the ALJ should have either incorporated his findings into the RFC determination or provided an explanation for their omission.

An ALJ must consider all of a person's impairments—including those that are not severe—in determining the person's RFC. 20 C.F.R. §§ 404.1545(a)(1) & (2), 416.945(a)(1) & (2). But an ALJ is not *required* to impose mental limitations within an RFC just because the ALJ has found some level of mental impairment. *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 n.3 (8th Cir. 2006) (rejecting argument that finding of mental impairment at step two required imposing related limitations in the RFC at step four because "[e]ach step in the disability determination entails a separate analysis and legal standard")). That said, where an RFC determination entirely ignores a person's mental impairments, error attaches. *Vicky R. v. Saul*, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *12 (D.

6

Minn. Jan. 28, 2021), *R. & R. adopted*, 2021 WL 533685 (D. Minn. Feb. 12, 2021), at *14; *Mark E. v. Kijakazi*, No. 20-cv-2047 (PAM/JFD), 2021 WL 6066260, at *10-11 (D. Minn. Dec. 7, 2021), *R. & R. adopted sub nom. Mark J. E. v. Kijakazi,* 2021 WL 6063631 (D. Minn. Dec. 22, 2021); *Charles C. v. Kijakazi*, No. 22-cv-2054 (JWB/DJF), 2023 WL 4215310, at *8-9 (D. Minn. May 22, 2023), *R. & R. adopted*, 2023 WL 4202850 (D. Minn. June 27, 2023). This is so because the analytical void deprives the Court of the opportunity for meaningful judicial review, and because it may lead to posing hypothetical questions to vocational experts that are inconsistent with a claimant's impairments. *Vicky R.*, 2021 WL 536297, at *14; *Mark E.*, 2021 WL 6066260, at *10-11; *Charles C.*, 2023 WL 4215310, at *8-9.

Here, at step two, the ALJ found that Plaintiff had mild limitations in all four areas of mental functioning (Tr. at 25) and that these limitations are supported by the record (Tr. at 26 ("Mild limitations, at most, in the four broad areas of mental functioning are supported by the record.")). The ALJ continued his analysis, noting that

> [t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.

(Tr. at 26.) The ALJ then determined "after careful consideration of the entire record" that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with the following limitations: frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, or scaffolds; occasional balancing;

7

> frequent stooping; no exposure to unprotected heights or moving mechanical parts; and no concentrated exposure to dust, odors, fumes and pulmonary irritants.

(Tr. at 28.) However, although the ALJ found at step two that Plaintiff has mild mental limitations, he did not incorporate any mental limitations into Plaintiff's RFC. Nor did the ALJ include an explanation for his omission in his discussion of Plaintiff's RFC construction. Instead, the ALJ provided only a boilerplate summary explanation:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the objective medical evidence does not show clinical findings to support greater physical or mental limitations than set out in the residual functional capacity. The objective medical evidence of record establishes that the claimant is capable of performing a modified range of medium work.

(Tr. at 29.) This is not enough. The Court finds that "the mild mental limitations" the ALJ found at step two "should have been incorporated into the RFC determination or a reason provided for their omission." *Vicky R.*, 2021 WL 536297, at *14. Moreover, the ALJ's omission of mental limitations from the RFC, and lack of explanation for such omission, was reversible error because it bears on the hypothetical questions that the ALJ provided to the vocational expert. (Tr. at 77-85.) Because the RFC is incomplete, the Court finds that substantial evidence does not support the ALJ's step four conclusion that Plaintiff can perform her past relevant work as a home health aide. *Vicky R.*, 2021 WL 536297, at *16.

The ALJ's step five finding that Plaintiff can also perform other medium, unskilled work does not cure the ALJ's error.

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to: understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions[;]

> respond appropriately to supervision, coworkers and work situations; and deal with changes in a routine [work setting].

SSA POMS DI 25020.010(3)(a) Mental Demands of Unskilled Work, https://perma.cc/WKG6-PVGV(last visited Mar. 27, 2024). With an incomplete record regarding Plaintiff's ability to meet the mental demands of unskilled work in light of her mild mental limitations, the Court cannot find the ALJ's error harmless. Thus, the Court concludes that on this issue, the case must be remanded to the ALJ to address Plaintiff's step two mental limitations in the RFC. To be clear, the ALJ may well conclude that, based on Plaintiff's impairments, there was no need for any mental limitation in the RFC. But absent some analysis on that point, the Court would be left to review this matter by intuition rather than based on the record.

## II. SUBSTANTIAL EVIDENCE IN THE RECORD SUPPORTS THE ALJ'S FINDING THAT PLAINTIFF DID NOT NEED A WALKER.

Plaintiff also argues that the ALJ's RFC was not supported by substantial evidence because it did not account for Plaintiff's need to use a walker. In so doing, Plaintiff also challenges the ALJ's analysis of Nurse Swanson's January 25, 2022 medical opinion. Although the Court concluded above that the matter must be remanded, this issue is addressed for the sake of completeness.

It is Plaintiff's burden to establish that her RFC should have included greater limitations than imposed by an ALJ. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citing 20 C.F.R. §§ 404.1520(a), (e), (f); 404.1545-46; 404.1560-61; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.

9

1995)). The question before the Court is whether a reasonable mind could accept that no such limitations are necessary on this record, as the ALJ found. *Biestek*, 139 S. Ct. at 1154. In considering this question, the Court does not substitute its own judgment for that of the ALJ by reweighing the evidence; instead, it must consider evidence that supports and detracts from the ALJ's decision and affirm the ALJ's decision where "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

The ALJ accepted that Plaintiff had several severe physical impairments and imposed limitations in Plaintiff's RFC based on these impairments. (Tr. at 28.) But Plaintiff contends that the ALJ erred, nonetheless, by discounting Nurse Swanson's medical opinion that would have supported further restrictions: Plaintiff's need for a walker. Plaintiff asserts that the ALJ failed to address the supportability factor when he found unpersuasive Nurse Swanson's opinion about Plaintiff's need for a walker and should have addressed evidence in the record which Plaintiff argues supports Nurse Swanson's opinion.

By regulation, an ALJ must consider several factors in evaluating the persuasiveness of medical opinions and prior administrative medical findings, but must prioritize the factors of supportability and consistency as the most important. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that a medical opinion will be considered more persuasive the more it is supported by objective medical evidence; consistency means that medical opinion will

10

be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Diane M. W.*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022) (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

Here, the ALJ conducted an appropriate evaluation of Nurse Swanson's medical opinion. The ALJ found Nurse Swanson's January 25, 2022 medical opinion "not persuasive" because "the need for a walker on an ongoing basis has not been demonstrated by the clinical findings or the objective evidence." (Tr. at 33.) As support for his conclusion, the ALJ cited records from other providers which show clinical findings and objective evidence did not demonstrate an ongoing need for a walker. (Tr. at 33 (citing Tr. at 351, 367, 377, 378, 774, 798).) For example, the ALJ cited medical records from June 2021, noting Plaintiff's normal lungs and heart, full strength, sensation in her lower extremities, full range of lumbar motion, and ability to reach her ankles. (Tr. at 33 (citing Tr. at 351).) The ALJ also cited medical records from January 4, 2022, which demonstrated evidence of Plaintiff's lower spine tenderness and related limitation of motion, but that she had no numbness or tingling in her legs and feet, and was able to walk with a normal gait, no limp, and without any assistive devices. (Tr. at 33 (citing Tr. at 774).)

Turning to other evidence in the record, the ALJ also considered emergency room records from January 24, 2022. (Tr. at 32 (citing Tr. at 809).) Plaintiff reported feeling

11

lightheaded and dizzy, and falling while bending over earlier that morning. (Tr. at 809.) But upon examination, Plaintiff's treating provider Physician's Assistant ("PA") David Cullen found that Plaintiff's heart and lungs were normal, and Plaintiff had normal range of motion. (*Id.*) The provider also found Plaintiff's neurological assessment to be unremarkable, noting that Plaintiff had normal strength and sensory abilities, including in her legs, feet, arms, and hands. (*Id.*) Plaintiff's laboratory workup during the visit was stable. (Tr. at 811.)

Finally, turning to the telephonic hearing before the ALJ on May 10, 2022, Plaintiff testified that she experienced "on and off" dizziness, but admitted that she had not returned to Nurse Swanson for treatment since late January 2022. (Tr. at 70.) Plaintiff also testified that she used her walker "every day, in the house" because she experienced "dizzy spells, once in a while." (Tr. at 71.) But when asked if she used the walker outside the home, Plaintiff testified that she uses it only "sometimes" and that she "usually [brings] it with [her] just in case." (*Id.*)

Based on its review of the record and the ALJ's determination, the Court finds that the ALJ's conclusion finding Nurse Swanson's opinion unpersuasive as to Plaintiff's need for a walker reflects a careful consideration of the record as a whole. Although Plaintiff can point to citations in the record to support her position, ultimately a reasonable mind could point to other places in the record to support the ALJ's determination that Plaintiff did not need a walker. And while Plaintiff may disagree with the ALJ's conclusions, this Court may not reverse even if it "would have reached a different conclusion than the Commissioner or because substantial evidence supports a contrary conclusion." *Fentress*

*v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (quoting *Igo v. Calvin*, 839 F.3d 724, 728 (8th Cir. 2016)) (cleaned up).

## ORDER

Based on the above findings, as well as the files, records, and proceedings above,

**IT IS ORDERED** that:

1. Plaintiff's Motion (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**;

2. Defendant's Motion (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**; and

3. This case is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

DATED: March 28, 2024         *s/Douglas L. Micko*
                              DOUGLAS L. MICKO
                              United States Magistrate Judge